UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL RENTERIA-VILLEGAS, and DAVID ERNESTO GUTIERREZ-TURCIOS, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Case No. 3:11-cv-218 <br><br> Senior Judge John T. Nixon <br><br> Magistrate Judge Joe Brown |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ICE'S MOTION TO DISMISS**

Come now the Plaintiffs, by and through their undersigned attorney, and hereby submit this Memorandum of Law Supporting Plaintiffs' Response in Opposition to the Motion to Dismiss filed by United States Immigration and Customs Enforcement (ICE) (Doc. Entry No. 10).

**I. INTRODUCTION**

ICE's motion to dismiss should be denied in its entirety. ICE raises three primary grounds for dismissal. First, the agency maintains that this Court lacks subject matter jurisdiction because Plaintiffs' complaint presents no Article III case or controversy against ICE. Second, ICE argues dismissal is warranted because Plaintiffs' complaint fails to state a claim upon which relief can be granted. Third, ICE urges that under federal law and the Federal Rules of Civil Procedure, the agency is not a necessary or indispensable party to this suit, and consequently, this Court should order dismissal pursuant to Fed. R. Civ. P. 21. Finally, ICE effectively seeks an

1

advisory opinion from this Court as to the preclusive effect its ruling will have on subsequent state court proceedings.

The fatal flaw undermining each of ICE's grounds for dismissal is the agency's failure to acknowledge the legal consequences of its decision to remove under 28 USC § 1442(a)(1) (hereafter, "Section 1442(a)(1)"). Sometimes called the "federal officer removal statute," Section 1442(a)(1) implicates a unique set of jurisdictional, procedural, and substantive rules that do not apply in most other procedural settings. ICE makes no mention of these rules, which, properly applied, foreclose all of the agency's arguments. With respect to ICE's Article III argument, the Sixth Circuit has held that a federal agency's party status in a state-law controversy satisfies constitutional requirements in the Section 1442(a)(1) context. Similarly, ICE's application of the *Twombly-Iqbal* standard to Plaintiffs' Second Amended Complaint would be decisive, but for the fact that 28 USC § 1442(a) presents an exception to the well-pleaded complaint rule, and, by definition, always involves claims that would not have stated a claim under Fed. R. Civ. P. 12(b)(6). And ICE's argument that federal procedural and substantive rules now govern the question of the agency's indispensability in this suit would be perfectly acceptable, were it not for the fact that Supreme Court precedent requires federal courts reviewing state-law claims on Section 1442(a) removal jurisdiction to apply the underlying substantive law of the state. In sum, ICE's attempt to cram several square-peg grounds for dismissal into the round hole of Section 1442(a) removal ultimately means all of these arguments are without merit, and ICE's motion must be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

On January 7, 2011, Plaintiff Daniel Renteria-Villegas filed suit in Davidson County Chancery Court against the Metropolitan Government of Nashville and Davidson County

2

("Metro") and other state actors. *See* Verified Complaint, Doc. Entry No. 1-1, Exhibit A. Plaintiff sought declaratory and injunctive relief under the Tennessee Declaratory Judgment Act, as well as damages against Sheriff Hall and Officer Bearden. *Id.* On January 19, 2011, Metro moved to dismiss for failure to join an indispensable party. *See* "Metro Motion to Dismiss For Failure to Join an Indispensable Party", attached as Exhibit A to Plaintiff's Opposition to ICE's Motion to Dismiss. *See also* "Memorandum in Support of Metro Motion to Dismiss", attached as Exhibit B to Plaintiff's Opposition to ICE's Motion to Dismiss; *and* Metro Reply to Plaintiff's Response in Opposition to Motion to Dismiss, attached Exhibit C to Plaintiff's Opposition to ICE's Motion to Dismiss. Metro claimed the United States, as a party to the 287(g) agreement, was an indispensable party pursuant to Tenn. Code. Ann. § 29-14-107(a). Plaintiff Renteria later amended his Complaint, striking the individual defendants and damages claims and leaving the only remaining causes of action those challenging the validity of the 287(g) contract between Metro and ICE under state and local law. *See* First Amended Verified Complaint, Doc. Entry No. 1-2, Exhibit B.

Prior to the Chancellor's decision on Metro's motion to dismiss, the United States Attorney for the Middle District of Tennessee transmitted a letter to both parties indicating that the United States did not believe it is an indispensable party to the action, and that it claimed no interest in the outcome. *See* Letter dated February 8, 2011, from Jerry Martin, United States Attorney for the Middle District of Tennessee to Lora Fox and Elliott Ozment, Doc. Entry No. 11-1, Exh. 1. The letter did not directly address the issue of whether its rights would be prejudiced if the Chancellor granted the relief Plaintiff was seeking. *Id.* Although the U.S. Attorney's letter was entered into the record, no representative of the United States appeared at either of two hearings on Metro's motion. The Chancellor ultimately concluded as a matter of

3

state substantive law that the Tennessee Declaratory Judgment Act requires the United States' presence in this action because ICE is a party to the 287(g) contract. *See* Order Granting Motion to Add the United States as a Party, Doc. Entry No. 1-3, Exhibit C. ICE did not appeal this Order. Instead, ICE removed the action to federal court, asserting 28 U.S.C. § 1442(a)(1) – the federal officer and agency removal statute – as the sole basis for removal jurisdiction. *See* Notice of Removal, Doc. Entry No. 1. ICE then filed the present Motion to Dismiss. Doc. Entry No. 10.

## III. ARGUMENT

### A. ICE is a party to state-law controversy in this lawsuit.

The Court has subject-matter jurisdiction over this action because it presents an Article III controversy to which ICE – a United States government agency – is a party. *City of Cookeville v. Upper Cumberland Electric Membership Corp.*, 484 F.3d 380, 391 (6th Cir. 2007). ICE argues this Court lacks subject matter jurisdiction because Plaintiffs' complaint does not claim or present any allegation of injury or claim for relief against the agency, and thus, no Article III case or controversy exists. ICE contends that Plaintiffs "must allege *some* unlawful action by ICE and seek *some* relief against ICE."

Because ICE removed pursuant to the federal agency removal statute, this contention is incorrect as a matter of law.

As a preliminary matter, Plaintiffs note that because ICE invoked the jurisdiction of this Court based solely on the federal agency removal statute, 28 U.S.C. 1442(a)(1), Article III standing is not determined according to the well-pleaded complaint rule, as implied by ICE's citation to *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990) and *Allen v. Wright*, 468 U.S. 737, 751 (1984).[1] "Section 1442(a) is an exception to the 'well-pleaded complaint' rule, under which (absent diversity) 'a defendant may not remove a case to federal court unless the

---

[1] Neither case involves federal officer or agency removal under 28 U.S.C. § 1442(a)(1).

4

plaintiff's complaint establishes that the case 'arises under' federal law.'" *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006), quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (1983). Federal agencies like ICE may use Section 1442(a)(1) to remove cases in which they are parties "despite the nonfederal cast of the complaint." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). *See also* Wright, Miller, Cooper & Steinman, *Federal Practice and Procedure: Jurisdiction and Related Matters 4th Ed.* § 3726 ("Section 1442 represents an exception to the well-pleaded complaint rule in the removal context.").

Section 1442(a) is not an exception to the Article III "case or controversy" requirement. *See* U.S. Const. Art. III, Sec. 2. Rather, it is an exception to the requirement that the Article III case or controversy appear on the face of the well-pleaded complaint. When federal officers remove under § 1442(a)(1), it is well-settled that the case or controversy requirement is satisfied by the federal officer's assertion of a colorable federal defense. *See Jefferson County v. Acker*, 527 U.S. at 431 (1999); *see also Mesa v. California*, 489 U.S. 121, 128-129 (1989) (discussing the history of the federal defense requirement for federal officer removal jurisdiction). The Sixth Circuit has held that a different standard applies to § 1442(a)(1) removal by federal agencies. *City of Cookeville v. Upper Cumberland Electric Membership Corp.*, 484 F.3d 380 (6th Cir. 2007). In contrast to the colorable federal defense that federal officers must assert, federal agencies need not assert any such defense. The fact that the United States is a party to the controversy satisfies the Article III requirement. *Id.* at 389-390. According to the Sixth Circuit, "[o]ur independent reading of the text of § 1442(a)(1) is . . . that a federal agency defendant may remove without more." *Id.*

5

The facts and procedural history that produced the Sixth Circuit's Article III holding in *City of Cookeville* demonstrate that this holding is dispositive of ICE's Article III argument. Between 2001 and 2002, the City of Cookeville, Tennessee annexed nine surrounding areas which had previously been served by the Upper Cumberland Electrical Membership Corporation ("UCEMC"). *Id.* at 384. Cookeville owned and operated its own electric system. *Id.* Tennessee law afforded the City two options for supplying power to the newly annexed areas: (1) grant UCEMC a franchise to provide electric services to customers in the nine annexed areas; or (2) offer to purchase any electric distribution properties and service rights within the annexed area owned by UCEMC. *Id.* at 383, citing Tenn. Code. Ann. § 6-51-112(a). Cookeville chose the second option. *Id.* After the two parties reached an impasse regarding the value of electric services to be purchased, Cookeville sued UCEMC under state law in state court to condemn UCEMC's facilities and service rights. *Id.* at 384.

UCEMC moved to dismiss Cookeville's complaint because it did not name two federal agencies with mortgage interests in the electric facilities Cookeville sought to condemn. UCEMC based its motion to dismiss, *inter alia*, on a Tennessee statute requiring all parties with interests in the disputed land to be made defendants in eminent domain cases. *See Tenn. ex rel. City of Cookeville v. [UCEMC]*, 256 F. Supp. 2d 754, 755 (M.D. Tenn. 2003) (citing Tenn. Code Ann. § 29-16-106). To avoid dismissal, Cookeville added the two federal agencies as defendants. *Id.* However, Cookeville named the federal agencies as defendants only because of their status as a lender. However, Cookeville sought no relief from RUS, nor did it charge that RUS had done anything or taken any action or failed to take any action. The new federal agency defendants promptly removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1). 256 F. Supp. 2d at 755. The agencies did not assert that a federal question supported removal under § 1441. *Id.*

6

This procedural history ultimately led the Sixth Circuit to confront essentially the same issue ICE presents in its argument supporting dismissal for lack of subject-matter jurisdiction in this case. The Court acknowledged the Article III tension that arises when a federal agency invoking Section 1442(a)(1) removal jurisdiction has not technically been "sued," but rather, has merely been added as a defendant to a state-law action in order to comply with statutory joinder requirements imposed by state law. *See generally* 484 F.3d at 388-391. After a probing analysis of Section 1442(a)(1)'s language and legislative history, the Sixth Circuit concluded that the statute's "'sued' clause applies only to federal officers and not to federal agencies." 484 F.3d at 390. In contrast to Section 1442(a)(1) removals by federal officers, the Court held that the "requirement of a colorable federal defense . . . is not only not supported by the statutory language, but also is not necessary to ensure the constitutionality of § 1442(a) under Article III of the Constitution." *Id.* at 391. The Court grounded its holding in the language of "Article III, section 2 [which] extends the federal judicial power 'to Controversies to which the United States shall be a Party.'" *Id.* The Sixth Circuit's decision in *City of Cookeville* thus makes it clear that a federal agency's status as a party to a state-law action raises an Article III controversy. It is this controversy that supports the constitutionality of the federal district court's subject-matter jurisdiction over a case removed under Section 1442(a)(1).

Applying *City of Cookeville* to the facts of this case, ICE's Article III case or controversy argument must fail. Like the City of Cookeville, Plaintiff Renteria sued a state party in state court to enforce his rights under Tennessee law. Defendant Metro Government, like UCEMC, moved to dismiss on the ground that Tennessee statutory law – in this case, the Tennessee Declaratory Judgment Act, T.C.A. § 29-14-107(a) – required joinder of all parties whose interests would be affected by the outcome of the suit, or where the rights of absent parties would

7

be prejudiced by a judgment. Plaintiffs in this case, like the City Cookeville, amended to add the federal agency Defendant and avoid dismissal, but did not allege any wrongdoing on the part of the agency, or seek any relief from it. ICE, like the federal agency defendants in *City of Cookeville*, removed to federal court, with § 1442(a)(1) being the sole basis for federal jurisdiction. As was the case in *City of Cookeville*, the federal agency's status as a party to the state-law controversy satisfies the requirements of Article III.

ICE is thus incorrect that the lack of an Article III case or controversy on the face of the Plaintiffs' complaint defeats subject matter jurisdiction. But even if ICE were correct that no Article III case or controversy exists, it could not obtain the relief it seeks. The sole ground ICE asserted in support of removal jurisdiction was Section 1442(a)(1). Doc. Entry. No. 1 (Notice of Removal at 1). ICE claims it removed "in order to assert all of its available defenses – including this jurisdictional Article III defense[.]" Doc. Entry No. 11 at 5 n. 4. But if ICE could succeed on this Article III defense, dismissal of ICE as a party would be proper. Rather, in the absence of an Article III case or controversy sufficient to confer subject matter jurisdiction upon this Court, the only option available to this Court is remand. *See* 28 U.S.C. § 1447(c) ("If at any time [after removal and] before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). If ICE is to be believed, it asserted the jurisdiction of this Court so that it could convince this Court that it lacks jurisdiction. Fortunately, because this Court clearly has subject matter jurisdiction pursuant to *City of Cookeville*, the Court need not wade deeper into the cognitive dissonance engendered by ICE's procedural maneuver.

### B. Plaintiffs need not state a claim against ICE.

ICE's motion to dismiss for failure to state a claim must fail because ICE is a court-ordered party to the suit under Tenn. R. Civ. P. 19, and therefore, Plaintiffs need not state a claim

8

against the agency. As discussed above, Section 1442(a)(1) removal jurisdiction represents an exception to the well-pleaded complaint rule. It allows federal officers and agencies to remove suits to federal court even where the plaintiff has not stated a cause of action that could otherwise be entertained in federal court. *See e.g., Jefferson County v. Acker*, (1999). Section 1442(a)(1) supplies federal actors an independent ground of federal court jurisdiction over complaints that could not be heard in federal court. ICE's attempt to graft a *Twombly-Iqbal* pleading standard onto a complaint that, by definition, could not have been brought in federal court is therefore illogical and incorrect as a matter of law.

The doctrine of derivative jurisdiction governs Section 1442(a) removals. *See Palmer v. City National Bank*, 498 F.3d 236, 244 (4th Cir. 2007) (holding Congress's addition of § 1441(f) applies only to removals under § 1441, leaving the "archaic" concept of derivative jurisdiction in place for Section 1442 removals). *See also Troszak v. United States*, 2010 U.S. Dist. Lexis 50801 *4-5 (E.D. Mich. May 6, 2010) (same); *Glass v. Nat'l R.R. Passenger Corp.*, 570 F. Supp. 2d 1180, 1183 (C.D. Cal. 2008) (holding that "the derivative jurisdiction doctrine is alive and well and applies to 28 U.S.C. § 1442 removals.). Because of the derivative nature of federal court jurisdiction in such cases, state substantive law governs actions removed under Section 1442(a)(1). *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). "[T]he invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied. In this respect, it is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties." *Id.* Consequently, Tennessee state substantive law governs Plaintiffs' claims.

Pursuant to the substantive law of Tennessee governing parties that must be included in any suit arising under the Tennessee Declaratory Judgment Act, the Davidson County Chancellor held ICE was an indispensable party and ordered Plaintiffs to add ICE as party. Although the

9

Chancellor ordered Plaintiff Renteria to add ICE as a party – or else face dismissal – the Chancery Court did not and could not order Plaintiff to add a claim for relief against ICE. ICE cites no authority under Tennessee state law that requires parties to state a cause of action against indispensable parties added pursuant to Tenn. R. Civ. P. 19(a) or the Tennessee Declaratory Judgment Act. Nor are Plaintiffs aware of any such state-law authority.

Even if this issue were governed by federal law it is not clear that Sixth Circuit law requires a cause of action to be stated against a party joined pursuant to Fed. R. Civ. P. 19(a). Such a rule would seem ill-suited to the purpose of Rule 19. "By definition, parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated as a practical matter as to impair either the effectiveness of relief or their own or present parties' ability to protect their interests." *Equal Employment Opportunity Comm'n v. Peabody Western Coal Co.*, 400 F.3d 774, 783 (9th Cir. 2005), quoting *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship & Trainig Cmte.*, 440 F. Supp. 506, 518 (N.D. Cal. 1977).

The Supreme Court has suggested in dicta that no such cause of action is necessary. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 356, n. 43 (1977). Although it recognized the plaintiff had no viable cause of action against a union, the Court wrote that "the union will properly remain in this litigation as a defendant so that full relief may be awarded . . . ." *Id.* In support of this proposition, the Court cited Fed. R. Civ. P. 19(a) and the Sixth Circuit's decision in *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1095 (6th Cir. 1974). *Id. See Peabody Western Coal Co.*, 400 F.3d at 782 (discussing the Supreme Court's decision in *Teamsters*). While the applicability of the Sixth Circuit's decision in *MacMillan Bloedel Containers* outside of the Title VII context is unsettled, it is clear that, at the very least, there is

10

no binding precedent requiring a cause of action to be stated against a Rule 19(a) party, and also that authority of the Sixth Circuit and the Supreme Court support do not seem to require as much.[2]

### C. ICE is a necessary party this action.

ICE is a necessary party because under the Tennessee Declaratory Judgment Act, that this Court cannot accord parties complete relief in its absence.[3] Fed. R. Civ. P. 81(c)(1) provides for the application of the Federal Rules of Civil Procedure in actions removed to federal court. However, as previously noted, the derivative nature of the federal court's jurisdiction in cases removed pursuant to Section 1442(a)(1) requires federal courts to apply state substantive law in those cases. *Arizona v. Manypenny*, 451 U.S. at 242. The Court's decision in *Manypenny* came after the *Granny Goose* decision, and it involved federal officer removal. Consequently, the applicable rule in this case is that set forth in *Manypenny*, which requires that "the invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied" *Id. Cf. Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437 (1974). Accordingly, while Fed. R. Civ. P. 19(a) is the appropriate procedural vehicle for determining ICE's necessity and indispensability in this action, the Court must also apply the substantive state law governing declaratory judgment suits in Tennessee.

---

[2] Other circuits are split on the question of whether a Plaintiff that adds a party pursuant to Rule 19(a) must state a cause of action against that party. *See EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 782 (9th Cir. 2005). *Cf. Vieux Carre Prop. Owners v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989); *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 366 (D.C. Cir. 1999).

[3] Though Plaintiff took the opposition position during the state court phase of this litigation, the practical implications of the relief ICE seeks command a different stance. If this Court were to find that ICE is not a necessary party to this action and remand to the Chancery Court for further proceedings, it is conceivable in a "worst-case scenario" that the Chancellor would conclude Plaintiffs' case against Metro cannot go forward in the absence of ICE, *Waco v. U.S. Fidelity Guaranty Co.,* 293 U.S. 140 (1934), notwithstanding this Court's dismissal of ICE. Were that to happen, the case could be dismissed in both State and federal court. The *res judicata* implications that would attach would leave in place an illegal contract in violation of both local and federal law, which is simply untenable to Plaintiffs. It is conceivable in a "best-case scenario" that the Chancellor would order Plaintiffs to re-add ICE as a Defendant, thus setting up this case as a virtual "ping pong ball" to bounce eternally between two courts. These scenarios are simply unacceptable to Plaintiffs and should not be countenanced by this Court.

11

In this case, the underlying substantive law to be applied is the Tennessee Declaratory Judgment Act. Tenn. Code Ann. §§ 29-14-101 *et seq.* The Act explicitly includes a heightened, statutory joinder requirement. Tenn. Code Ann. § 29-14-107(a). It requires not only that "all persons shall be made parties who have or claim any interest which would be affected by the declaration," but also that "no declaration shall prejudice the rights of persons not parties to the proceedings." *Id.* Tennessee state courts applying the Act have held that it "imposes stricter requirements than those imposed by the Tennessee Rules of Civil Procedure requiring joinder of indispensable parties in all types of cases." *Timmins v. Lindsey*, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009), citing *Wright v. Nashville Gas & Heating Co.*, 194 S.W. 2d 459, 461 (1946).

The Sixth Circuit has construed identical statutory language to require joinder of a federal agency as a necessary party. In *Neary v. Columbus Metro*, the Court considered the terms of the Ohio Declaratory Judgment Act. 1999 U.S. App. Lexis 20626 (6th Cir. 1999) (unpublished). Like the Tennessee Declaratory Judgment Act, the Ohio Act provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding." Ohio Rev. Code § 2712.12. Because the federal agency in *Neary* was responsible for ensuring the state defendant's compliance with federal regulations and for distributing funds pursuant to those regulations, *Id.* at *3, Plaintiffs "were required to join [the federal agency] as a necessary party." *Id.* at *7. Here, the 287(g) contract vests ICE with a statutory responsibility to supervise DCSO Jail Enforcement Officers and ensure their compliance with federal regulations. *See* 287(g) Contract §§ VII (Training of Personnel) and X (ICE Supervision). *See also* 8 U.S.C. § 1357(g)(2). ICE is thus in a very similar position to the federal agency in *Neary* that the Sixth

12

Circuit found to be a necessary party under identical statutory language governing declaratory judgment actions.

Moreover, ICE is a necessary party under T.C.A. § 29-14-107(a) because the declaration and relief Plaintiffs seek regarding the legality of the 287(g) contract would prejudice the rights of ICE to enforce that contract. *Compare Huntsville Utility Dist. v. General Trust Co.*, 839 S.W.2d 397, 402-03 (Tenn. Ct. App. 1992) (where bondholders' right to enforce contract provision was at issue, the Court held that "the other party must be joined."). It would, at the very least, require ICE's re-tasking of the federal employee responsible for supervising the DCSO's 287(g) program on-site in the Davidson County Jail. It would prevent ICE's IDENT/ENFORCE equipment from being used to verify immigration status and initiate removal proceedings. And it would affect the manner in which ICE utilizes DCSO Jail Enforcement Officers to interrogate and collect evidence from DCSO inmates.

For these reasons, the Chancellor held that the Tennessee Declaratory Judgment Act requires ICE's presence as a party to this suit. While 28 U.S.C. § 1450 certainly allows this Court to "revisit" that order after removal, the Supreme Court's decision in *Arizona v. Manypenny* also requires that any revisiting be carried out under state substantive law. A state judge has construed state statutory and decisional law and issued an order adding ICE based on that construction. At the very least, our system of judicial federalism and the unique nature of derivative jurisdiction in federal officer removal cases counsels strongly in favor of affording due deference to that decision.

### D. Plaintiffs should be granted leave to amend.

If this Court ultimately determines that ICE is not a necessary party to this suit, the Court should grant Plaintiffs leave to amend their complaint prior to dismissing ICE and remanding the

13

case to state court. Plaintiffs could not have brought any state or federal claims against ICE in the Davidson County Chancery Court because the court would not have had subject matter jurisdiction over those claims. Had Plaintiffs attempted to plead a federal cause of action in the Second Amended Complaint, ICE could have availed itself of the doctrine of derivative jurisdiction to have those claims dismissed by this Court on Section 1442(a)(1) removal jurisdiction. *See Arizona v. Manypenny*, 451 U.S. 232, 243 n.17 ("In the area of general civil removals, it is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there. *Freeman Bee Machine Co.*, 319 U.S. 448, 449 (1943)[.]").

Only if necessary in order to avoid dismissal, Plaintiffs are prepared to file either an Amended Complaint or a Motion for Leave to Amend. In such an Amended Complaint, Plaintiffs (as an alternative to dismissal of Defendant ICE) will seek to add a claim against ICE arising under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq*. If Plaintiffs are correct that the 287(g) contract violates state and local law, ICE's participation in the contractual arrangement violates federal law as well. Federal law requires that 287(g) functions be performed only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). Thus, Plaintiffs should be granted leave to add a claim for declaratory relief against ICE under the APA for violation of 8 U.S.C. § 1357(g)(1). The addition of this claim would eliminate any controversy about ICE's necessity or indispensability to this suit. Plaintiffs only want to do this, however, if this Court determines that Defendant ICE should be dismissed otherwise.

14

**IV. Conclusion**

This Court should deny ICE's motion to dismiss because an Article III case or controversy involving ICE exists, Plaintiffs need not state a claim against ICE given the present procedural posture, and ICE is a necessary and indispensable party to this action.

In the alternative, if this Court finds that dismissal is warranted on any ground other than ICE's Article III argument, Plaintiffs should be allowed to re-plead their claims under Fed. R. Civ. P. 81(c)(2) to conform with the requirements of the federal forum, or they should be granted leave to amend under Fed. R. Civ. P. 15(a)(2).

    Respectfully submitted,

    /s Elliott Ozment

    Elliott Ozment, Attorney at Law
    Law Offices of Elliott Ozment
    1214 Murfreesboro Pike
    Nashville, TN 37212
    (615) 321-8888 (O)
    (615) 321-5230 (F)
    Email: elliott@ozmentlaw.com

**CERTIFICATE OF SERVICE**

       This is to certify that a true and correct copy of the foregoing <u>Plaintiffs' Memorandum of Law in Opposition to Defendant ICE's Motion to Dismiss</u> has been served by electronic means via the U.S. District Court's electronic filing system on April 4, 2011 on:

Laura Barkenbus Fox
Assistant Metropolitan Attorney
Department of Law
Metro Courthouse
One Public Square — Suite 108
P.O. Box 196300
Nashville, TN 37219-6300

Keli Oliver
Assistant Metropolitan Attorney
Department of Law
Metro Courthouse
One Public Square — Suite 108
P.O. Box 196300
Nashville, TN 37219-6300

Elizabeth A. Sanders
Assistant Metropolitan Attorney
Department of Law
Metro Courthouse
One Public Square — Suite 108
P.O. Box 196300
Nashville, TN 37219-6300

Jerry E. Martin
United States Attorney
Middle District of Tennessee

Mark H. Wildasin
Assistant United States Attorney
110 9th Ave. South, Suite A-961
Nashville, Tennessee 37203-3780

Tony West
Assistant Attorney General

David J. Kline
Director

Joshua E.T. Braunstein
Assistant Director

Craig A. Defoe
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044

                                                 s/ Elliott Ozment