IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DANIEL RENTERIA-VILLEGAS, ) | |
| DAVID ERNESTO GUTIERREZ-TURCIOS, ) | |
|     Plaintiffs, ) | |
| v. ) | No. 3:11-cv-00218 |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE & DAVIDSON COUNTY, ) | Judge Sharp |
| UNITED STATES IMMIGRATION AND ) | |
| CUSTOMS ENFORCEMENT AGENCY, ) | |
| ) | |
|     Defendants. ) | |

**THE METROPOLITAN GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND ORDER FOR CERTIFICATION FOR INTERLOCUTORY APPEAL AND TO ISSUE A STAY PENDING APPEAL**

This is an action for declaratory and injunctive relief. The Plaintiffs seek a declaration that the October 2009 Memorandum of Agreement ("MOA") between ICE and the Metropolitan Government of Nashville & Davidson County ("Metropolitan Government") violates the Metropolitan Government's Charter. The Plaintiffs also seek an injunction to prevent the Davidson County Sheriff's Office ("DCSO") from performing its duties under the MOA.

On June 21, 2011 the Court entered the Order that granted the Plaintiffs' Motion to Amend the Complaint. (Doc. No. 44). In the Memorandum that accompanied the Order the Court found that in the event that the Plaintiffs lacked standing under the Second Amended Complaint, the Plaintiffs were entitled to amend the Second Amended Complaint to correct or cure the lack of standing. (Doc. No. 43). The Court also found that the Plaintiffs have standing under the Second Amended Complaint. The Court concluded Article III standing is not necessary to determine whether a plaintiff has standing in a declaratory judgment action removed pursuant to 28 U.S.C. 1442(a)(1); instead the state's standing rules are to be applied. The Court

1

also concluded that in the event constitutional Article III standing is necessary the Plaintiff Gutierrez's situation presents a real and immediate threat of future injury that affords him such standing. (Doc. No. 43).

The Order involves controlling questions of law as to which there are substantial grounds for difference of opinion and an immediate appeal from said order will materially advance the ultimate termination of this litigation. The Metropolitan Government, therefore, requests certification of the Order for the purpose of an interlocutory appeal pursuant to 28 U.S.C. § 1292.

## LAW AND ARGUMENT

28 U.S.C.A. § 1292 provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C.A. § 1292(b).

To reach a determination that certification is appropriate the Court must conclude that: "1) the order involves a controlling question of law, 2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and 3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re city of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Based upon the following reasons the Order satisfies these criteria for an interlocutory appeal.

### I. THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW.

"A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. Examples of when the question of law may be deemed controlling include the following: 1) if resolution of the issue on appeal could result in reversal

2

of the final judgment, 2) if resolution has precedential value, 3) the issue is central to liability, or 4) it would save the court and litigants substantial time and resources. *Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2001).

Central to the Order (Doc. No. 44) are the Court's conclusions expressed in the Memorandum that concern the issue of standing. (Doc. No. 43). Standing is precisely the type of issue that presents a controlling question of law.

A controlling question of law, "may involve an entire theory of liability, a defendant's amenability to suit, or <u>a plaintiff's standing</u>." *Federal Appeals Jurisdiction and Practice*, §2:9 (3d Ed.) (emphasis added) (copy attached).

Moreover, the Court of Appeals has previously granted interlocutory appeal on the issue of standing. *See Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142 (6Th Cir. 1975) (*departed from on other grounds concerning the appropriate criteria to be used to determine standing under §4 of the Clayton Act*) *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079 (6th Cir. 1983).

The Memorandum that accompanied the Order addressed three legal issues that constitute controlling questions of law. First is whether a complaint may be amended to cure or correct the lack of standing. The second issue that constitutes a controlling question of law is whether standing under the applicable state's rules is sufficient without regard to Article III with respect to state law claims in an action that has been removed pursuant to 28 U.S.C.A. § 1442(a)(1). The third and final issue is in the event that constitutional Article III standing is required whether Plaintiff Gutierrez has stated a "real and immediate threat of injury" to satisfy Article III standing.

3

Case 3:11-cv-00218   Document 51   Filed 07/05/11   Page 3 of 12 PageID #: 1429

The Sixth Circuit has not directly addressed: 1) standing in the context of an action removed pursuant to 28 U.S.C. § 1442(a)(1) that seeks only declaratory and injunctive relief, or 2) whether a plaintiff may amend the complaint to cure a lack of standing. Resolution of these intertwined standing and right to amend issues has obvious precedential value, i.e., if the Court of Appeals were to grant permission to pursue interlocutory appeal, it would ultimately issue an opinion on each of the issues for which there is an absence of Sixth Circuit precedence. A determination on appeal that the Plaintiffs lacked standing would obviously affect the outcome of this case. Such a determination would result in reversal of the final judgment. The Court and the parties would save substantial time and resources with the resolution of these controlling questions of law considering the early stage of this action, e.g., answers have not been filed and discovery has not commenced.

Based on the foregoing reasons, the first criterion is satisfied for certification for an interlocutory appeal, i.e., the Order involves controlling issues of law. *See Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2001).

## II.  SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST.

A substantial ground for difference of opinion can exist in three situations: "1) the issue is difficult and of first impression, 2) a difference of opinion exists within the controlling circuit, or 3) the circuits are split on the issue." *Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d at 1019 (citation omitted).

### A.  IS AMENDMENT PERMITTED TO AFFORD STANDING?

With respect to the issue of whether a complaint may be amended to cure or correct a lack of standing, the Sixth Circuit has not addressed the issue in the context of an action removed from state court by a federal agency pursuant to 28 U.S.C. § 1442(a)(1).

4

The Court in its Memorandum distinguished *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002) wherein the Court of Appeals held that a plaintiff cannot amend a jurisdictionally defective complaint to confer retroactive jurisdiction. The basis for distinction was that the party in *Zurich* initially filed the action in federal court when it had no standing to bring the action in the first place. No other Sixth Circuit cases are known to exist that have addressed whether a party may amend to cure a lack of standing in any action that has been removed.

In the context of whether a party may amend to cure standing deficiencies, there is a split among other Circuits. The Fifth, Eighth and Ninth Circuits have held that the lack of standing or jurisdiction may not be cured by amendment. *E.g.: Federal Recovery Serv.'s, Inc. v. United States*, 72 F.3d 447 (5th Cir. 1995); *Iron Cloud v. South Dakota*, 984 F.2d 241 (8th Cir. 1993); and *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062 (9th Cir. 1979). An unreported Third Circuit decision and the Eleventh Circuit have held that amendment to cure the standing defect should be allowed. *E.g.: Revell v. Port Auth. of New York*, 321 Fed. Appx. 113 (3d Cir. 2009) (copy attached); and *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237 (11th Cir. 2000).

The issue of whether a party may amend to cure or correct a lack of standing has not been addressed by the Sixth Circuit in the context of an action that has been removed from state court by a federal agency pursuant to 28 U.S.C. § 1442(a)(1). As such, this case presents a matter of Sixth Circuit first impression. In other removal contexts the Circuits are split on the question of whether amendment is permissible to cure the lack of standing. Therefore, a substantial ground for difference of opinion exists. *See Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2001).

5

### B. IS ARTICLE III STANDING REQUIRED?

A second matter of first impression in the Sixth Circuit exists on the issue of whether Article III standing is necessary in addition to standing under state law rules in an action that has been removed pursuant to 28 U.S.C.A. § 1442(a) (1). The Court in the Memorandum conceded that it "found no controlling case which directly answers that question." (Doc. No. 43, pg. 11).

However, the Court found persuasive the Court of Appeals unpublished opinion in *Aarti Hospitality, LLC v. City of Grove City*, 350 Fed. Appx. 1 (6th Cir. 2009) (copy attached) for the proposition that in an action removed pursuant to 28 U.S.C. § 1442(a)(1) the plaintiff need only have standing under applicable state standing rules without the need to satisfy the constitutional standing requirements of Article III. The Court of Appeals in *Aarti* concluded that the plaintiffs did not have standing under applicable Ohio law. *Id.* at 11. However, the Court of Appeals did not decide the issue of whether Article III's standing requirements also must be met if the plaintiff is able to satisfy the state's standing requirements. The Court of Appeals quoted the law of the Ninth Circuit, which is: "'a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.' *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (holding in a diversity case that, although California law authorized the plaintiff to challenge the defendant's allegedly unfair business practices without having suffered an individualized injury, the plaintiff nevertheless lacked standing to pursue his state law claims in federal court because he failed to satisfy Article III's standing requirements)." *Id.* at 7. The Court of Appeals went on to specify that: "We might be called upon to determine whether Article III forecloses suit in federal court despite the plaintiff's ability to satisfy Ohio's standing requirements, thereby confronting *Lee* head-on and deciding whether it is the law of this circuit.

6

However, we need not reach that <u>important</u> question today because we conclude that, under Ohio substantive law, plaintiffs do not have standing to seek an Ohio declaratory judgment." *Id*. at 7 (underlining added). Thus, it is questionable whether *Aarti* supports the conclusion that Article III standing is unnecessary in an action removed to federal court provided the plaintiff had standing under state law.

The Court took note in its Memorandum that the Court of Appeals in *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380 (6th Cir. 2007) was concerned with whether a federal agency needed to posit a federal claim or defense in order to remove the action; not whether there was a jurisdictional bar to prevent the district court from asserting jurisdiction after removal. The Court of Appeals in *City of Cookeville* did not address whether the determination that the right to remove exists resolves other jurisdictional issues as it took note of the fact that: "Cookeville did not identify any rule that would have divested the district court of jurisdiction." *City of Cookeville*, 484 F.3d at 395, Footnote 5. Thus, the decision in *City of Cookeville* does not resolve the issue of whether standing under state law in an action that is removed pursuant to 28 U.S.C. § 1442(a)(1) obviates the need to satisfy the constitutional standing requirement of Article III.

Jurisdiction, as distinguished from the right to remove, involves a second inquiry as noted by the Ninth Circuit which wrote:

> Section 1442, however, doesn't resolve the jurisdictional issue. The statute merely allows the federal government to remove a case to federal district court; it does not determine whether the court has jurisdiction to hear it. *See id.* § 1447(c); *Nebraska ex rel. Dep't of Soc. Serv's. v. Bentson,* 146 F.3d 676, 679 (9th Cir.1998) ("A defendant's power to remove a case to federal court is independent of the federal court's power to hear it. These are analytically distinct inquiries and should not be confused. Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims.").

7

*State Engineer of Nevada v. South Fork Band of Te-Moak Tribe of Western Shoshone Indians of Nevada*, 339 F.3d 804, 809 (9th Cir. 2003).

Courts in the First, Fifth, and Ninth Circuits have held that cases removed pursuant to 28 U.S.C. § 1442 must meet the constitutional standing requirement. *E.g.: Maine Assn.' of Interdependent Neighborhoods v. Petit*, 700 F.Supp. 75, 77 (D. Maine 1986) ("Thus, although removal pursuant to 28 U.S.C. § 1442(a) may expand the jurisdiction of the district court, and arguably grant an express right of action to persons who might be barred by prudential standing requirements, such removal plainly does not obviate the need for compliance with the constitutional requirements of standing.") (internal quotations omitted); *Int'l Primate Protection League v. Administrators of the Tulane Educations Fund*, 895 F.2d 1056, 1061 (5th Cir. 1990) *rev'd. sub nom. Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991) ("Although standing requirements in state courts are often less stringent than those of Article III, the issue lacks relevance here, as standing in federal court is determined entirely by Article III and depends in no degree on whether standing exists under state law; and *State Eng'r. of Nev. V. S. Fork Band of Te-Moak Tribe*, 339 F.3d 804, 809 (9th Cir. 2003) ("A defendant's power to remove a case to federal court is interdependent of the federal court's power to hear it. These are analytically distinct inquiries and should not be confused. Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims.").

The Metropolitan Government is unaware of any case in which any other Circuit has held that § 1442 circumscribes or obviates the standing requirement of Article III. The issue is a matter of first impression in the Sixth Circuit. First, Fifth and Ninth Circuits have reached a different conclusion than has this Court. Thus, substantial grounds for difference of opinion

8

exist. *See Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2001).

### C. DOES ARTICLE III STANDING EXIST?

The final issue of first impression is whether the Plaintiffs lacked standing under Article III as challenged by the Metropolitan Government's factual attack on the absence of subject matter jurisdiction. The Court concluded for the purpose of Article III standing that the Plaintiff Gutierrez's situation presented a future threat of injury that is "real and immediate, not conjectural or hypothetical." The conclusion was based on the presumed truthfulness of allegations contained in the Second Amended Complaint. However, the standing challenge that the Metropolitan Government raised was in the form of a factual attack on subject matter jurisdiction rather than a facial attack on the sufficiency of the Second Amended Complaint. The Plaintiffs presented no facts to refute the Declaration of Constance Taite. Based on the undisputed facts, the Plaintiffs lacked standing under Article III.

When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990). Motions brought pursuant to Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction "come in two forms: (1) a facial attack which merely tests the sufficiency of the pleading and (2) a factual attack which argues the existence or non-existence of certain facts which deprive the Court of jurisdiction." *Hudson v. AJS Associates*, 2008 WL 5214203 at *2 (M.D. Tenn. Dec. 12, 2008) (citations omitted) (copy attached).

When there is a factual attack on subject matter jurisdiction, no presumptive truthfulness applies to the complaint. Once a factual attack is raised, the court must weigh the conflicting

evidence to arrive at the factual predicate that subject matter jurisdiction does or does not exist. *See Gentek Building Products, Inc. v. Steel Peel Litigation Trust,* 491 F.3d 320, 330 (6th Cir. 2007). The court may proceed to weigh the evidence and satisfy itself as to its power to hear the case. *Hudson* at *2 (citations omitted).

In the context of the factual challenge on the issue of Article III standing, the Plaintiffs presented no evidence to refute the Declaration of Constance Taite. (Doc. No. 13). Therefore, the undisputed facts for the purpose of evaluating standing are: 1) Plaintiff Gutierrez's guilty plea referenced in the Second Amended Complaint requires that he serve 10 days on weekends (Doc. No. 13, ¶7) and 2) those serving weekend sentences are classified as "minimum security" and are not subjected any encounter with DCSO ICE Jail Enforcement Officers or ICE screening (Doc. No. 13, ¶7). These facts do not constitute a real and immediate threat of future injury necessary to afford Gutierrez standing. *See Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983); *Blakely v. United States*, 276 F.3d 853, 873 (6th Cir. 2002).

The Metropolitan Government is not aware of any case in which a Circuit Court has held in the context of a motion to amend a complaint for declaratory and injunctive relief that a plaintiff similar to Gutierrez had Article III standing under the foregoing undisputed facts. As such, the criterion of substantial grounds for difference of opinion is satisfied. *See Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2001).

### III. IMMEDIATE APPEAL MAY ADVANCE ULTIMATE TERMINATION OF THE LITIGATION.

"Interlocutory appeal is favored when reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens. Interlocutory appeal is most appropriate early in the proceedings. In contrast, the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made."

*Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 957 (M.D. Tenn. 2001).

On the other hand, "when the litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d at 351.

Reversal by the Court of Appeals would not merely alter the course of these proceedings it would terminate them. The proceedings are in the earliest stage. No answers have been filed. Discovery has not commenced. The case is not nearing trial. Large and significant expenditures of time and resources have not yet been made. It therefore follows that an immediate appeal may significantly advance the ultimate termination of this action. *See In re city of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); and *Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 957 (M.D. Tenn. 2001).

## CONCLUSION

Judicial economy will best be served by an interlocutory appeal. The three criteria for certification under 28 U.S.C.A. §1292(b) are satisfied. Accordingly, the Order should be amended to include the certification that the issues decided in said order involve controlling questions of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
SUE B. CAIN #9380, DIRECTOR OF LAW

/s/Derrick C. Smith
Keli J. Oliver (#21023)
Derrick C. Smith (#013961)
Assistant Metropolitan Attorneys
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341

**Certificate of Service**

This is to certify that a copy of the foregoing has been forwarded electronically to Elliot Ozment, 1214 Murfreesboro Pike, Nashville, TN 37217 Craig A. Defoe, P.O. Box 868, Ben Franklin Station, Washington, DC 20008, Joshua E.T. Braunstein, 450 5th Street NW, Room 6024, Washington, DC 20001 and Mark H. Wildasin, 110 9th Avenue S., Suite A961, Nashville, TN 37203-3870, via the CM/ECF electronic filing system, on this the 5th day of July, 2011.

s/Derrick C. Smith
Derrick C. Smith