IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **DANIEL RENTERIA-VILLEGAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:11-cv-00218 |
| **METROPOLITAN GOVERNMENT OF** | ) | |
| **NASHVILLE & DAVIDSON COUNTY,** | ) | Judge Sharp |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT

The Metropolitan Government submits this memorandum of law in support of its motion to dismiss Plaintiff Daniel Renteria-Villegas's Fourth Amended Complaint. Count I, which purports to be brought pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, fails to state a claim under any of those Constitutional provisions. The Fourth Amendment is inapplicable to the facts of this case. The Fifth Amendment only applies to federal, not state officials. And Plaintiff's Fourteenth Amendment due process claim is subject to dismissal because: (1) the Metropolitan Government's conduct, as alleged, does not "shock the conscience"; and (2) Plaintiff has failed to plead that his state law remedies are inadequate. Furthermore, Plaintiff has failed to sufficiently plead a Section 1983 municipal liability claim under any Constitutional theory, as his wholly conclusory contentions are not supported by any well-pleaded factual allegations of a deliberately indifferent custom, policy, or practice of the Metropolitan Government.

Likewise, Count II of the Fourth Amended Complaint should be dismissed because the Metropolitan Government is immune from this claim pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, et seq.

# FACTUAL BACKGROUND[1]

Plaintiff's claims arise out of his detention at a DCSO facility during which he was subject to ICE "screening" – i.e., verification of citizenship status. Plaintiff alleges that he was required to undergo an ICE screening process after being booked into DCSO custody following his arrest. The arrest report for Plaintiff listed his place of birth as Mexico, although Plaintiff was actually born in Portland Oregon.

Although Plaintiff originally challenged the validity of the 287(g) Memorandum of Agreement between the Metropolitan Government and ICE that allowed him to be detained in order to verify his citizenship, his theory has now "evolved" since the Tennessee Supreme Court upheld the legality of the MOA. The crux of Plaintiff's Fourth Amended Complaint is that he was essentially held in violation of the MOA because DCSO allowed non-ICE employees to place an investigative hold on Plaintiff without the issuance of an I-247 Detainer Form. An I-247 Detainer permits DCSO ICE officers to hold an arrestee up to 48 hours after he would otherwise be released in order to verify citizenship status. In this case, no Detainer was issued, and Plaintiff alleges that he was unlawfully held in custody for approximately 12 hours after his state charges were dismissed.

Plaintiff has sued the Metropolitan Government alleging violation of his Constitutional due process rights and a state law tort claim of false imprisonment. This Court should dismiss Plaintiff's claims for the reasons set forth herein.

---
[1] All facts are drawn from the Fourth Amended Complaint (Doc. No. 121).

# LEGAL ANALYSIS

A. **Standard of Review**

The standard for testing the sufficiency of the allegations in a complaint in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) was articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). A plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.

Additionally, the Supreme Court has clarified that the <u>Twombly</u> standard is not limited to antitrust cases. Rather, "[t]hough <u>Twombly</u> determined the sufficiency of a complaint sounding in antitrust, the decision was based on [the Court's] interpretation and application of Rule 8 [of the Federal Rules of Civil Procedure]." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1953 (2009). The "decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions,'" including this one. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1953.

As the Supreme Court reiterated in <u>Iqbal,</u> "'where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 557). Further, the tenet that a court must accept as true all of the well-pleaded *factual* allegations contained in a complaint is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. (citations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Id</u>. at 1950. (citations omitted). Determining whether a complaint states a claim for relief that is plausible on its face is a context-specific exercise that requires a court to "draw in its judicial experience and common sense." <u>Id.</u>

## B.     Count I -- Due Process Claim

*Fourth Amendment*

Plaintiff's due process claim purports to be brought pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  However, the Fourth Amendment does not apply to the facts of this case.  Plaintiff was a detained arrestee at the time of the incident giving rise to his "due process" and false imprisonment claims.  "Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between."  Lanman v. Hinson, 529 F.3d 673, 680 (6th Cir. 2008) (quoting Phelps v. Coy, 286 F.3d 295, 299 (6th Cir. 2002)(citing Gravely v. Madden, 142 F.3d 345, 348-49 (6th Cir. 1998)).  The Fourth Amendment applies until the arrestee "is taken before a magistrate judge, or other judicial official, to determine whether the arrest and continued detention were based on probable cause."  Barrie v. Grand County, 119 F.3d 862, 866 (10th Cir.1997); see also Pierce, Aldini v. Johnson, 609 F.3d 858, 867 (6th Cir. 2010).  Here, the conduct of which Plaintiff complains occurred after he was taken before a judicial official.  Thus, the Fourteenth Amendment applies to his claims.  Any "Fourth Amendment" claim should be dismissed.

*Fifth Amendment*

Plaintiff also purports to bring his due process claims under the Fifth Amendment as well.  However, the Fifth Amendment to the Constitution applies only to actions of the federal government.  Riley v. Camp, 130 F.3d 958, 972 n. 19 (11th Cir.1997) ("The Fifth Amendment obviously does not apply here—the acts complained of were committed by state rather than federal officials."); see also Newsom v. Vanderbilt University, 653 F.2d 1100, 1113 (6th

4

Cir.1981); Prosser v. Francoeur, 85 F. Supp. 2d 736, 738 (E.D. Mich. 2000). Therefore, Plaintiff's "Fifth Amendment" due process claim should be dismissed.

*Fourteenth Amendment*

First, it must be noted that Plaintiff has not specified whether he is alleging a substantive or a procedural due process claim. However, the allegations of Count I indicate that it is the procedural process of his detention that he is challenging, And, in any event, Plaintiff cannot state a substantive due process claims on the facts alleged in the Fourth Amended Complaint.

The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (rejecting plaintiff's claim that an arrest without probable cause constituted a violation of plaintiff's substantive due process rights). As a general matter, federal courts have "been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered area are scarce and open-ended." Id. at 271-72, 114 S.Ct. at 812.

Furthermore, even assuming that a 12-hour detention was within the categories afforded substantive due process protections, Plaintiff has failed to plead facts that the Metropolitan Government's conduct in this case "shock the conscience." While there is a dearth of Sixth Circuit authority on the issue of when an alleged "over-detention" at a jail can state a substantive due process claim, the Eighth Circuit has repeatedly analyzed this issue. And a 12-hour detention, with no allegation of any abuse or mistreatment, does not fit the bill.

In Luckes v. County of Hennepin, Minn., 415 F.3d 936, (8th Cir. 2005), the Eighth Circuit addressed the detention of an arrestee for 24 hours due to a jail's computer malfunctions

5

and booking process inefficiencies. The Eighth Circuit held that this alleged detention was insufficient to support a substantive due process claim as a matter of a law, noting that

> [the plaintiff's detention] -- while unfortunate and understandably upsetting -- does not shock the conscience. Luckes ultimately argues that the County's inefficiently executed booking and release procedures resulted in his extended detention, the duration of which should shock our conscience. This is a question of law. Our cases, and those of the Seventh Circuit that we have cited with approval on this subject, have held that post-arrest detentions of fifty-seven days, thirty-eight days, and eighteen days sufficiently shock the conscience to establish a substantive due process violation. Such detentions far exceed the twenty-four-hour detention experienced by Luckes.

Id. at 940 (citing Hayes v. Faulkner Co., 388 F.3d 669, 673 (8th Cir. 2004); Armstrong v. Squadrito, 152 F.3d 564, 581-82 (7th Cir. 1998); Coleman v. Frantz, 754 F.2d 719, 723-24 (7th Cir. 1985)).

Here, Plaintiff alleges that his release was delayed 12 hours after a magistrate judge dismissed his state criminal charges. He does not allege any other abuse or mistreatment. He has not pleaded sufficient facts to state a plausible claim of a substantive due process violation that would "shock the conscience." Accordingly, to the extent Plaintiff seeks to allege substantive due process claims in Count I, those claims should be dismissed.

In addition, because Plaintiff has failed to allege that state law or administrative processes were inadequate to redress the alleged due process violations at issue, his Section 1983 procedural due process claim may not proceed.

To establish a due process claim, Plaintiff must establish that his life, liberty, or property rights were violated without due process of law. Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). But a "[p]laintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or

6

administrative processes and remedies to redress her due process violations." Jefferson v. Jefferson County Pub. Sch. Sys., 360 F.3d 583, 587-88 (6th Cir. 2004); see also Braley v. City of Pontiac, 906 F.2d 220, 225 (6th Cir. 1990). In fact, Plaintiff must allege and establish one of the following criteria to establish a procedural due process claim: (1) the state did not have a remedy, (2) the state had a remedy but it was deemed inadequate, or (3) the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy. Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999).[2]

As the Middle District recognized in McMillion v. Metro. Gov't of Nashville & Davidson County, 3:10-CV-0229, 2011 WL 1100007 (M.D. Tenn. Mar. 22, 2011)(copy attached):

> A plaintiff fails to state a deprivation of due process claim when she does not allege "[t]he inadequacy of state post-deprivation remedies." Nunn v. Lynch, 113 Fed. App'x 55, 61 (6th Cir. 2004). "Accordingly. . . 'the plaintiff must attack the state's corrective procedure as well as the substantive wrong.'" Id. (quoting Meyers v. City of Cincinnati, 934 F.2d 726, 731 (6th Cir.1991)).

Here, Plaintiff has not alleged that he has no adequate state law remedy for the alleged "due process" violations that he has suffered. Indeed, Plaintiff has alleged a state law false

---

[2] Another Sixth Circuit panel decision decided a few months after Jefferson expressed its disagreement with the Jefferson court's analysis that pleading and proving inadequate state law remedies was a prerequisite to *all* federal due process claims. See Mitchell v. Fankhauser, 375 F.3d 477 (6th Cir. 2004) The Mitchell panel read Parrat v. Taylor, 451 U.S. 527 (1981), a seminal due process case discussing the interplay between state remedies and a federal due process claim, as holding that pleading and proving the inadequacy of state law remedies was only necessary when the alleged due process violation was a random, unauthorized act rather than an established governmental procedure. Mitchell, 375 F.3d at 483. The Mitchell panel acknowledged, however, that several prior Sixth Circuit panels had applied the "inadequate state law remedy" threshold question in cases that did not, in fact, involve random and unauthorized acts. Id. (citations omitted).

In any event, under either panel's analysis, Plaintiff's claim here fails because he did not plead or prove inadequate state law remedies. The gravamen of Plaintiff's Fourth Amended Complaint establishes that he is alleging that the act of detaining him without a Form I-247 Detainer is a random, unauthorized act that runs afoul of the 287(g) MOA between DCSO and the federal government. See Doc. No. 121 at ¶¶ 11, 18, 30, 31. Thus, it is not the kind of action taken "pursuant to established state procedures" that the Mitchell court found to absolve a due process plaintiff of the responsibility of pleading and proving inadequate state law remedies.

7

imprisonment claim arising out of the same facts, and recovery on that claim would fully compensate him for any damages that he has incurred. Therefore, Count I of the Fourth Amendment Complaint should be dismissed for failure to plead inadequate state law remedies.[3]

*Municipal Liability Generally*

Moreover, even if Plaintiff could state some form of due process violation, his wholly conclusory allegations of an unconstitutional custom, policy, or practice are insufficient to state a Section 1983 municipal liability claim against the Metropolitan Government. Plaintiff has alleged that the Metropolitan Government is liable to him for the deprivation of his civil rights. Section 1983, however, will not support a claim against a municipality based upon a *respondeat superior* theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). Rather, a municipality may be held liable "only for the adoption of a 'policy or custom' that violates federally protected rights." Schroder v. City of Fort Thomas, 412 F.3d 724, 727 (6th Cir. 2005); see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 819 (6th Cir. 2007).

To make such a showing, a plaintiff must come forward with proof that a governmental custom, practice or policy caused his injury. A plaintiff needs evidence of (1) a clear and persistent pattern of illegal activity; (2) about which the government knew or should have known; (3) yet the government remained deliberately indifferent; and (4) the government's custom or policy was the cause of the plaintiff's injuries. Thomas v. City of Chattanooga, 398 F.3d 426, 433 (6th Cir. 2005); Doe v. Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996).

The requisite standard for municipal liability is "deliberate indifference." See Connick v. Thompson, 563 U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). Deliberate

---

[3] Dismissal of Count I, the only federal claim, would also warrant dismissal of the Count II state law claim on jurisdictional grounds.

8

indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997).

Here, Plaintiff alleges that his due process rights were violated through DCSO's "custom, policy, or practice" of allowing DCSO personnel who are not trained ICE officers to place "investigative holds" in the DCSO computer system even when an I-247 Detainer has not been issued. Doc. No. 121 at ¶¶ 33-34. Plaintiff uses the magic words of "custom, policy, or practice" in hopes that this mere mention of the legal standard for municipal liability claims is enough to state a claim under Section 1983. But Iqbal and Twombly establish that this formulaic recitation of the elements of a claim is insufficient to overcome a motion to dismiss.

Plaintiff is attempting to extrapolate municipal liability from his own singular experience while detained. He has presented no factual allegations regarding more than this one isolated incident of a non-ICE DCSO officer placing a "hold" that led to an alleged over-detention. But "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. City of Okla. City v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion). "A pattern of similar constitutional violations ... is 'ordinarily necessary.'" Connick v. Thompson, 563 U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997)). A pattern also requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005). There are no well-pleaded factual allegations of a pattern of unconstitutional violations in the Fourth Amended Complaint.

As noted in Hutchison v. Metro, courts in the Sixth Circuit, and indeed in this District, have strictly interpreted Iqbal's requirement of "factual support" in municipal liability cases. See Hutchison v. Metropolitan Government of Nashville and Davidson Co., 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010)(citing Heyne v. Metro Nashville Public Schools, 2009 WL 3739382 at *6-7 (M.D. Tenn. Nov. 3, 2009); Arnold v. Metro Gov't of Nashville and Davidson Co., 2009 WL 2430822 at *5 (M.D. Tenn. Aug. 6, 2009); Howard v. City of Girard, Ohio, 2009 WL 2998216 at *3 (6th Cir. 2009)).

The shortcomings of the Fourth Amended Complaint in this case are evident when comparing that pleading with the complaints at issue in the Hutchison case and in the case of Johnson v. Metro, 2010 WL 3619790 (M.D. Tenn. Sept. 13, 2010)(copy attached), another Section 1983 municipal liability motion to dismiss decided here in the Middle District. In Hutchison, the plaintiff's complaint alleged as follows:

> 39. The regulations, customs, policies, and/or practices of Defendant Metropolitan Government and its officials regarding stopping vehicles and/or ordering passengers to step out of those vehicles permitted, encouraged, and/or tolerated Defendants Carter, Billingsby, and other unknown officers' stopping without sufficient cause the Vehicle and demanding Plaintiff to exit from the vehicle in disregard of his disability.
>
> 40. Defendant Metropolitan Government and its Officials failed to provide adequate training to Defendants Carter, Billingsby, and other unknown officers about stopping vehicles and/or ordering passengers to step out of those vehicles in disregard of their disabilities or injuries…
>
> 42. Defendants, acting under color of law and pursuant to Defendant Metropolitan Government's policy or custom or policy of inaction, violated Plaintiffs' [*sic* ] right to be free from unreasonable search and seizures in violation of the Fourth Amendment of the United States Constitution....

> 45. Defendants, acting under color of law and pursuant to Defendant Metropolitan Government's policy or custom or policy of inaction, violated Plaintiff's right to due process guaranteed by the Fourteenth Amendment of the United States Constitution ...

In finding these fairly lengthy and detailed allegations insufficient to state a Section 1983 municipal liability claim, the Court stated,

> In step one of the *Iqbal* process, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct at 1950. Plaintiff's claim regarding Defendant Metropolitan Government's custom, policy or practice of stopping vehicles and ordering passengers to exit the vehicles without sufficient cause and in disregard of passengers' disabilities is just such a conclusion without additional factual assertions of any kind. While Plaintiff details the events of the traffic stop, he does not include any facts related to a municipal policy on probable cause and traffic stops, or a municipal custom, policy or practice regarding drivers or passengers who are disabled. Similarly, beyond the assertion that Defendant Metropolitan Government failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles in disregard of their disabilities and injuries, Plaintiff gives no additional factual support. Therefore, Plaintiff's pleadings have "stop[ped] short of the line between possibility and plausibility" regarding municipal liability.

685 F.Supp.2d at 751.

Likewise, in Johnson, the plaintiff alleged that the Metropolitan Government had a policy or practice of inadequate training, hiring, and supervision of police officers, in part because it had "experienced a sufficient number of constitutional violations, including but not limited to Shelton's previous shooting incident that resulted in the death of the person to be shot . . ." In holding that these types of allegations of unidentified "other incidents," along with the reference to the past of the particular defendant officer, were insufficient to state a municipal liability claim, Judge Campbell held:

11

> [T]he Second Amended Complaint lacks any supporting facts to patch the threadbare legal claims for failure to train, supervise and discipline police officers, and for adoption of improper pursuit policies or customs. Plaintiff's factual pleading fails to illuminate Metro's policies or customs on any of these topics in general, and it does not explain how Metro's policies, customs, or practices constitute deliberate indifference to the constitutional rights of citizens. There are no facts to support Plaintiff's conclusory claim that such deficiencies are closely related to, or actually caused, Wallace's injury and death. *See Berry v. City of Detroit,* 25 F.3d 1342, 1346–47 (6th Cir.1994); *Howard v. City of Girard,* (Citations omitted)

Johnson v. Metro. Gov't of Nashville & Davidson County, 2010 WL 3619790 (M.D. Tenn. Sept. 13, 2010).

In the present case, as in in Hutchison and Johnson, while Plaintiff details the events of what happened to him personally, he does not include any well-pleaded facts related to a municipal custom, policy, or practice of wrongfully detaining arrestees. His pleadings have thus "stop[ped] short of the line between possibility and plausibility" regarding municipal liability, and Plaintiff's federal claim should be dismissed.

**C.    Plaintiff's state law claims against the Metropolitan Government**

*Immunity for a civil rights claim*

If the Court allows Plaintiff to pursue his federal due process claim, his state law claim should be dismissed on immunity grounds. The Metropolitan Government is a governmental entity subject to the provisions of the Tennessee Governmental Tort Liability Act ("TGTLA"). Hence, the Metropolitan Government is protected by the governmental immunity provided by the TGTLA, which states in pertinent part:

> (a)    Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury, which may result from the activities of such governmental entities, wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary. . .

12

> (c) When immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter.

TENN. CODE ANN. § 29-20-201.

The general rule in Tennessee is that municipalities shall be immune from suit, subject to certain specified exceptions under the TGTLA. Any plaintiff alleging that the circumstances of a particular case fall under one of those exceptions to immunity must bring his or her claim "in strict compliance with the terms" of the Act. TENN. CODE ANN. § 29-20-201(b). Further, it is well accepted that the "Act [TGTLA] is in derogation of the common law and thus must be strictly construed." Lockhart v. Jackson-Madison County Gen. Hosp., 793 S.W.2d 943, 945 (Tenn. Ct. App. 1990).

The TGTLA removes the Metropolitan Government's immunity from suit for certain acts on the part of its employees. However, the removal of immunity is subject to specific exceptions, including where the alleged injury arises out of enumerated intentional torts. Baines v. Wilson Co., 86 S.W.3d 575, 580 (Tenn. Ct. App. 2002)(citing TENN. CODE ANN. § 29-20-205(2)). That exception to liability includes injuries arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or ***civil rights.***" TENN. CODE ANN. § 29-20-205(2)(emphasis added).

Here, while Plaintiff may label his claims in alternative ways, all wrongful acts are alleged to have been committed in the context of the alleged deprivation of his federal due process rights through his wrongful "over detention" at DCSO. Thus, the fundamental nature of this case is that it is a civil rights suit. See Hale v. Randolph, 2004 WL 1854179 (E.D. Tenn.

13

2004)(copy attached); see also Rhodes v. City of Chattanooga, Tennessee, 2005 WL 2647921 (E.D. Tenn. Oct. 14, 2005)(copy attached); Jackson v. Thomas, 2011 WL 1049804 (Tenn. Ct. App. Mar. 23, 2011)(copy attached).

Numerous cases have applied the TGTLA "civil rights" exception where the same factual allegations are used to support both a civil rights and a state law tort claim. For example, in Hale v. Randolph, the plaintiff alleged a variety of Section 1983 claims against police officers, along with state law tort claims against police officers and the City of Chattanooga. 2004 WL 1854179 at *1. In finding the City immune, the Eastern District of Tennessee noted that the plaintiff's

> tort claims of false imprisonment, assault and battery, and negligence *per se* brought against the City under Tennessee law are predicated on the alleged violation of Hale's civil rights by City police officers. The contention that officers Randolph and Bradford committed assault and battery, false imprisonment, and official oppression clearly arise out of and directly flow from the allegations that the police officers deprived Hale of his civil rights by falsely arresting Hale without probable cause and using excessive force during the arrest. Because Hale asserts his false imprisonment, assault and battery, and negligence *per se* claims against the City in the context of a civil rights case, his alleged injuries arise out of "civil rights" and the City is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).

Id. at *17.

The Eastern District went on to reject the plaintiff's attempts to avoid the immunity provisions of the TGTLA by couching some of his claims as negligence claims. "Hale's negligence *per se* claim is predicated on intentional tortious conduct involving the violation of Hale's civil rights by City police officers. Based on the facts and circumstances in this case, the Court sees no good reason why the City should not have immunity from suit under the 'civil rights' exception in Tenn. Code Ann. § 29-20-205(2)." Id.

14

Similarly, in two cases decided very recently in the Middle District, the civil rights exception has been applied in holding the Metropolitan Government immune from a state law tort claim. First, this Court applied the civil rights exception where the gravamen of the Complaint was alleged excessive force and false arrest in violation of the Fourth Amendment. *See Okolo v. Metro*, *et al*., Case No. 3:11-731, Memorandum Opinion Granting Metro Motion to Dismiss, at 21-22, (copy attached hereto). The Court ruled that the Sixth Circuit case of <u>Johnson v. City of Memphis</u>, 617 F.3d 864, 872 (6th Cir. 2010), dictated such a result. *Id*.

Similarly, in an inmate-on-inmate assault "failure to protect" claim arising under the Fourteenth Amendment, Judge Nixon applied the civil rights exception to bar a plaintiff's negligence claim because his state law claims arose out of the same circumstances as his civil rights claims. <u>Dressman v. Metro. Gov't of Nashville Davidson County</u>, 3:11-CV-00336, 2012 WL 5931881 (M.D. Tenn. Nov. 27, 2012)

This Court should reach the same result here because Plaintiff is attempting to use the same facts that he alleges represent a civil rights violation to also maintain a state law tort claim. The Metropolitan Government is thus entitled to dismissal of the state law claim because it is statutorily immune.

15

Case 3:11-cv-00218   Document 123   Filed 01/09/13   Page 15 of 16 PageID #: 2231

Respectfully submitted,

THE DEPARTMENT OF LAW OF
THE METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON COUNTY
SAUL SOLOMON (#11689)
Director of Law

/s/Keli J. Oliver
Keli J. Oliver (#21023)
Derrick C. Smith (#13961)
Assistant Metropolitan Attorneys
P.O. Box 196300
108 Metropolitan Courthouse
Nashville, Tennessee 37219-6300
(615) 862-6341

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via the court's electronic filing system to the following:

Harry Elliott Ozment
Andrew Free
1214 Murfreesboro Pike
Nashville, TN 37217

Christina Iturralde
Dan Werner
Thomas Paul Fritzsche
233 Peachtree Street, NE
Suite 2150
Atlanta, GA 30303

Trina Realmuto
14 Beacon Street
Suite 602
Boston, MA 02108

on this 9th of January, 2013.

/s/Keli J. Oliver
Keli J. Oliver